UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION (AT COVINGTON)

| | | |
|---|---|---|
| **HEATHSHIAA ENGLEMON** | : | CASE NO: _____ |
| 70th 18th Street, Apt. 002 | | |
| Newport, KY 41071 | : | JUDGE: _____ |
| | | |
| v. | : | **PLAINTIFFS' COMPLAINT WITH JURY DEMAND ENDORSED** |
| | | |
| **RED EXPRESS DELIVERY SERVICES,** | : | |
| **INC.** | | |
| SERVE: Victor Scharstein (Agent) | : | |
| 1207 Maryland Ave. | | |
| Covington, KY 41011 | : | |
| | | |
| AND | : | |
| | | |
| **VICTOR F. SCHARSTEIN** | : | |
| 1207 Maryland Ave. | | |
| Covington, KY 41011 | : | |
| | | |
| AND | : | |
| | | |
| **NANCY KUEBEL** | : | |
| 1207 Maryland Ave. | | |
| Covington, KY 41011 | : | |
| | | |
| AND | : | |
| | | |
| **GINGER ELLIS** | : | |
| 1207 Maryland Ave. | | |
| Covington, KY 41011 | : | |
| | | |
| **Defendants** | : | |

Plaintiff Heathshiia Englemon ("Plaintiff" or "Shiia" or "Shiaa Englemon"), by and through counsel, and for her Complaint against Defendants Red Express Delivery Services, Inc., Victor Sharstein, Nancy Kuebel, and Ginger Ellis (collectively "Defendants"), states as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights case asserting claims arising from race discrimination and retaliation, including wrongful discharge against Shiia Englemon by Defendants Red Express Delivery Services, Inc. ("Red Express"), Victor Scharstein ("Scharstein"), Nancy Kuebel ("Kuebel"), and Ginger Ellis ("Ellis") at its location at 1207 Maryland Avenue in Covington, KY.

2. On or about May 11, 2015, Plaintiff Shiia Englemon filed EEOC charges against Red Express in relation to race/color, national origin discrimination, and retaliation perpetuated against her by Red Express, and certain of its managers/owners.

3. On or about March 10, 2016, Plaintiff received a Right to Sue letters from the EEOC.

**PARTIES**

5. At all relevant times herein, Plaintiff Shiia Englemon was an adult African American female individual and citizen and residents of Campbell County, Kentucky. During all relevant times, each has been (or was) an employee of Red Express. They were (or are) an employee within the meaning of 42 U.S.C. §5000e(f) and K.R.S. 344.030.

6. At all relevant times herein, Defendant Red Express is and/or was the employer of Plaintiffs and is an employer within the meaning of Title VII and K.R.S. 344.030. Red Express is a corporation, incorporated under the laws of Kentucky, with its corporate headquarters located in Covington, Kentucky.

7. Red Express is an express delivery service. Their website can be found at: http://http://www.redexpressdelivery.com/ On it, they claim to be a "successful package delivery courier business," that delivers "anything from small envelopes to large manufactured items."

8. Red Express also explains, in the "about us" section,[1] that "All of *our vehicles* travel to anywhere in the United States and Canada!;" "We constantly service *our own vehicles*, and breakdowns are far and few between;" "*Our drivers* are professionally trained and encouraged to use G.P.S. as a means to locate you and your customer quickly;" "*Our drivers* are friendly and courteous and *are required to wear uniforms*. They are regularly checked for tidiness and a professional appearance;" and "Here at Red Express Delivery we have the most committed sales team and employees in the business to offer the cheapest shipping method for our customers."

9. In its website, Red Express also explains that it has a number of vehicles and describes the features of those vehicles.[2] It likewise explains that the drivers have been equipped with equipment with Red Express.[3] In the shipping page, the company explains that their drivers all carry cell phones, and are responsive to, and their work controlled by, the company.[4]

10. A true and accurate copy of print outs from Red Express' website is attached hereto as **Exhibit A**.

11. A true and accurate copy of a twitter release from Red Express, indicating that they "employ cheetahs" is attached as **Exhibit B**.

12. Red Express specifically attempted to defend this matter before the EEOC by arguing that it employed less than 15 employees. On payroll as employees, Red Express claimed to be paying between 10 and 12 employees at any given time, but this explicitly excluded the delivery drivers.

---

[1] http://www.redexpressdelivery.com/page/About-us.aspx (last visited 5/24/2016).
[2] http://www.redexpressdelivery.com/page/Delivery-Vehicles.aspx (last visited 5/24/2016).
[3] http://www.redexpressdelivery.com/page/Expedited-Delivery.aspx (last visited 5/24/2016).
[4] http://www.redexpressdelivery.com/page/Shipping-Protection.aspx (last visited 5/24/2016).

3

13. In point of fact, Red Express employs more than 15 employees. Red Express improperly and illegally classifies their delivery drivers ("Drivers") as "independent contractors," notwithstanding the fact that they are, and should have been, classified as employees.

14. Among other things, Red Express required and requires the Drivers to: (i) wear Red Express uniforms; (ii) be on call on a set schedule set by Red Express; (iii) not accept work from other delivery companies or "moonlight;" (iv) send any requests for services received by and potential customer through Red Express; (v) perform the work as directed, where they occurred, and when they occur; (vi) be responsive to, and be directed by, the dispatch center; (vii) drive in only Red Express trucks and other vehicles; (viii) use only Red Express equipment and resources in performing their duties; and (ix) use only vehicle insurance procured by Red Express for the vehicles.

15. Specifically, applying the so called Darden[5] factors to these drivers: (i) Red Express has the right, and in fact does, control the manner and means by which the service of the Drivers is rendered; (ii) the skill of driving does not require any specialized skill; (iii) Red Express is the source of the instrumentalities and tools used by the Drivers; (iv) the work is performed abroad, but it is as directed by Red Express; (v) the relationship between the Drivers and Red Express is an ongoing one, and, while Red Express has created a contract to attempt to disclaim the relationship at issue, the facts indicate an ongoing, systemic relationship as between Red Express and the Drivers; (vi) in addition to driving deliveries, Red Express has in the past assigned additional tasks to the Drivers and has the right to do so in the future; (vii) Red Express retained and retains discretion over when and how long the Drivers work, as they must be on call

---

[5] *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992); *Marie v. Am. Red Cross*, 771 F.3d 344 (6th Cir. 2014).

4

for Red Express according to a schedule set by Red Express; (viii) the Drivers are paid per run performed for Red Express; (ix) the Drivers are not permitted to subcontract or hire assistants to assist them; rather, each of the Drivers has a direct relationship with Red Express; (x) the delivery service performed by the Drivers is part of the core business of Red Express; (xi) Red Express is in business; and (x) while Red Express does not provide employee benefits to the Drivers and treats them for tax purposes as independent contractors, that is the very essence of Red Express' scheme – to defraud the Internal Revenue Service and Social Security Administration of appropriate withholding and tax remittances.

16. Based on the foregoing, Red Express has, at all times relevant herein, employed over 15 employees.

17. Defendant Scharstein was a shareholder, and exercises substantial, if not total control, over Red Express. At all times relevant herein, Defendant Scharstein exercised control and direction over the working conditions of Plaintiff. Scharstein is white.

18. Scharstein is also a two-time convicted federal felon, having been convicted in the United States District Court for the Eastern District of Kentucky in 1981 of Conspiracy to Manufacture and Possess Explosives, Dealing in Explosives without a License, and Interstate Transportation of Commercial Explosives, in *United States v. Scharstein*; and then again on October 4, 2011 in *United States v. Scharstein*, 2:11-cr-00018-DCR-EBA for a convicted felon in possession of a firearm ("Firearm Conviction").

19. Defendants Kuebel and Ellis hold officer positions in Red Express, Inc., and, upon information and belief, are shareholders in the company. Each exercises substantial control over Red Express. At all times relevant herein, Defendants Ellis and Kuebel exercised control and direction over the working conditions of Plaintiff. Ellis and Kuebel are both white.

## JURISDICTION AND VENUE

20. The Plaintiffs have exhausted all required administrative remedies prior to commencing this action.

21. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this case is conferred on this Court pursuant to 42 U.S.C. §2000e-5, 28 U.S.C. §1331, 28 U.S.C. §1343, and other applicable law.

22. Subject matter jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367, which provides for supplemental jurisdiction over state law claims which are so related to the federal law claims that they form one case or controversy for Article III purposes.

23. Venue in this district and division is proper pursuant to 28 U.S.C. §1391 and other applicable law. Specifically, the acts, omissions, and other events complained of all occurred in Kenton County, Kentucky.

## FACTS

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

24. Plaintiff Shiia Englemon began employment with Red Express in February, 2006, in a customer service capacity. In that capacity, she worked in the office, handling customer calls, problems, complaints, and assisting with dispatching vehicles for delivery service with Red Express.

25. At that time, in February, 2006, Red Express was owned solely by Defendant Victor Scharstein, and was essentially the alter ego of Scharstein.

26.     Ms. Englemon became pregnant in March, 2006, and worked throughout the pregnancy. On December 1, 2006, Mr. Scharstein discharged the Plaintiff to collect unemployment. This was received by Plaintiff until March, 2007, when Plaintiff returned to work with Red Express.

27.     Ms. Englemon became pregnant again in February, 2008, and the same layoff occurred in November, 2008, in connection with the birth of her second child; she returned to work with Red Express in February, 2009.

28.     Until the spring of 2015, Ms. Englemon's employment with Red Express was largely unremarkable; she was given more duties over time, and occasionally received raises (though sometimes these were rescinded based on financial difficulties of the company).

29.     At some point, she became the office manager, which she believes occurred in approximately 2012, following Mr. Scharstein's second federal felony conviction for the Firearm Conviction.

30.     On December 5, 2011, Scharstein self-surrendered and began a 37-month term of incarceration imposed by Judge Reeves.

31.     Prior to his self-surrender, Scharstein transferred some or all of his stock to Defendant Kuebel, so that she could exercise control of Red Express during his incarceration.

32.     In approximately May, 2014, Scharstein was released from federal prison. He returned to Covington, Kentucky, and resumed control and work with Red Express.

33.     Upon his return, it became immediately apparently to employees of Red Express, including Plaintiff, that Scharstein's stay in federal prison changed his personality – he became paranoid and offensive towards employees and likewise had cameras installed throughout the Red Express building.

34. By January, 2015, Plaintiff was earning approximately $12 per hour, and working approximately 50 to 55 hours per week.

35. In late February, 2015, Scharstein asked the Plaintiff whether she was pregnant; she responded that she was not pregnant. Scharstein then told Plaintiff that she waddled when she walked, and that he could not understand why the customers liked her, because she was "fat and black."

36. Plaintiff immediately reported this incident to Kuebel and Ellis. They informed her that "that is the way he is and you will just have to deal with it."

37. Upon information and belief, they communicated this complaint to Scharstein, who then decided that he was going to retaliate against the Plaintiff.

38. Plaintiff lodged additional complaints to Kuebel and Ellis regarding additional, pervasive, ongoing, repeated, and offensive racially related comments that Plaintiff received from Scharstein, between February and April, 2015, to Kuebel and Ellis, and they indicated "that is how he talks to people," "I can't change him," and similar statements. She likewise explained to Scharstein that his comments were unwelcome on several occasions, but he did not cease his offensive behavior.

39. On April 10, 2015, Scharstein called Plaintiff and berated her about the phone line being filled with "static noise."

40. Thereafter, on April 14, 2015, Scharstein called Plaintiff to report to his residence, which was one block away from Red Express in Covington. Upon information and belief, this property is actually owned by Kuebel.

41. Plaintiff recorded a portion of the conversation on her telephone, wherein he indicated that he "does not think [Plaintiff] like[s] being a black woman, I really don't," called

her fat, and told her that she was "about to get fired." When Plaintiff inquired as to why she was going to be fired, he stated that it was because she "did not enjoy being a black woman."

42. Scharstein then terminated Plaintiff's employment.

43. Scharstein terminated Plaintiff's employment due to her race, color, and/or national original, and/or her complaints about prior discriminatory comments Scharstein made towards her.

44. Scharstein subsequently told other employees, and Plaintiff has obtained written statements, that he fired her, and he "wasn't going to let [her] come back because [she] couldn't get over being black."

45. Plaintiff raised complaints with Kuebel and Ellis, who, upon information and belief, could have taken corrective action, but they refused.

### COUNT I -- HOSTILE WORK ENVIRONMENT RACIAL HARASSMENT (against Red Express only; 1981a,and KRS Chapter 344 claims)

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

46. That because of their race, Plaintiff was subjected to various actions and mistreatment of Plaintiff by Defendants, as set forth in the preceding paragraphs.

47. That the conduct of the Defendants was so severe and/or pervasive that it had the purpose and effect of unreasonably interfering with the Plaintiff's work performance and/or creating an intimidating, hostile, and/or offensive work environment.

48. That the conduct of the Defendants was so severe and/or pervasive that it would have had the purpose and effect of unreasonably interfering with a reasonable African American employee's work performance and/or creating an intimidating, hostile, and/or offensive work environment for a reasonable African American employee.

9

49. Kuebel, Scharstein, and Ellis supervised Plaintiff. As a result, Defendant Red Express is liable for the actions of the individuals. In the alternative, Red Express knew or should have known of the actions described herein, and failed to take reasonable care to prevent and promptly correct the actions of the individuals, and is therefore liable for their actions.

50. As a proximate result of the acts and omissions set forth above, Plaintiff has suffered and continue to suffer damages and losses, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered and continues to suffer from emotional distress for which she should be compensated.

51. The above actions by the Defendants constitute hostile work environment race harassment in violation of 42 U.S.C. §2000e, *et seq.* and KRS §344.010 (2012), *et seq.*, including retaliation under KRS §344.280, rendering Defendant Red Express liable for injunctive relief, equitable relief, including back pay, damages, attorneys' fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and such other damages as may be proven at trial, under the provisions of 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a, as well as KRS §344.450.

**COUNT II – DISCRIMINATION – Disparate Impact and Disparate Treatment (federal and state law claims against Red Express ,1981a, and KRS Chapter 344 claims)**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

52. The facts as alleged herein constitute direct evidence of discrimination in violation of 42 U.S.C. §2000e, *et seq.* and KRS §344.010, *et seq.*

53. In the alternative, at all times herein, Plaintiff was an African American, and as such, was a member of the class of protected individuals under 42 U.S.C. 2000e, *et seq.* and K.R.S. Chapter 344, *et seq.*

10

54. Plaintiff was qualified for her jobs with Defendant Red Express at all times herein or otherwise performing their jobs in a manner which should have met the reasonable business expectations of the Defendant Red Express.

55. Plaintiff suffered intentional discrimination and ultimately, had various adverse actions taken against them as the result of her status within the protected class.

56. Furthermore, other individuals outside of Plaintiff's protected class employed by Defendant Red Express were treated more favorably, were not harassed, and did not have material adverse employment actions taken against them, or did not have material adverse employment actions taken against them for the same actions or omissions that served as the alleged basis for Plaintiff's adverse action.

57. In addition to the disparate treatment, Defendant Red Express's work requirements and/or other policies, given the flexibility and enforcement discretion regarding same, coupled with the existence of the treatment complained of herein, had a disparate treatment upon members of the protected class, i.e. African Americans.

58. As a proximate result of the Defendant Red Express' actions as set forth above, Plaintiff has suffered and will continue to suffer damages and losses, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continue to suffer from emotional distress all for which she should be compensated.

59. The above actions by the Defendants constitute unlawful discrimination in violation of 42 U.S.C. §2000e, *et seq.* and KRS §344.010 (2012), *et seq.*, including retaliation under KRS §344.280, rendering Defendant Red Express liable for injunctive relief, equitable relief, including back pay, damages, attorneys' fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and such other damages as may be proven at

trial, under the provisions of 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a, as well as KRS §344.450.

### COUNT III – RETALIATION (federal claims against Red Express, and state law claims against all Defendants)

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

60. Following Plaintiff's reports of unlawful conduct to Defendant Red Express, and to the Defendants Ellis and Kuebel, who in turn reporting it to Scharstein, discrimination and harassment escalated, in violation of 42 U.S.C. §2000e, *et seq.* and KRS §344.010, *et seq*. Furthermore, Ellis, Kuebel, and Scharstein, along with Red Express took active, concerted steps to discharge Ms. Englemon after her initial report of race discrimination, and in fact Scharstein did ultimately discharge the Plaintiff due to her race and her reporting the prior incidents, and said as much as he did it.

61. In addition to the foregoing, Defendant Red Express, and Defendants Ellis, Kuebel, and Scharstein discriminated against Plaintiff on the basis of her race and on the basis that she opposed discrimination and complained of it.

62. As a result of the complaints of racial discrimination, Red Express and Defendants Ellis, Kuebel, and Scharstein retaliated against the Plaintiff as set forth in this Complaint.

63. As a direct and proximate result of the Defendants' conduct described herein, Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has also suffered from and continue to suffer emotional distress from Defendants' conduct described herein, all for which Plaintiff should be compensated.

64. The above actions by the Defendants constitute unlawful discrimination in violation of 42 U.S.C. §2000e, *et seq.* and KRS §344.010, *et seq.*, including conspiracy to retaliate and violate the foregoing provisions under KRS §344.280, rendering Defendant Red Express liable for injunctive relief, equitable relief, including back pay, damages, attorneys' fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and such other damages as may be proven at trial, under the provisions of 42 U.S.C. §2000e-5 and 42 U.S.C. §1981a, as well as KRS §344.450.

65. Scharstein, Kuebel, and Ellis are liable for injunctive relief, equitable relief, including back pay, damages, attorneys' fees, compensatory damages, including damages for emotional distress, loss of income, benefits, and such other damages as may be proven at trial, under state law pursuant to KRS §344.280, in that they each aided, abetted, or retaliated the pervasive racial discrimination, and were actively involved in retaliating against Plaintiff for complaining and asserting their rights under federal and state anti-discrimination laws.

**COUNT IV – RACE DISCRIMINATION (federal claims under 42 USC 1981 against Delta and Individual Defendants)**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

66. That because of their race, Plaintiff was subjected to various actions and mistreatment of Plaintiff by Defendants, as set forth in the preceding paragraphs.

67. That the conduct of the Defendants were so severe and/or pervasive that it had the purpose and effect of unreasonably interfering with the Plaintiff's work performance and/or creating an intimidating, hostile, and/or offensive work environment.

68. That the conduct of the Defendants was so severe and/or pervasive that it would have had the purpose and effect of unreasonably interfering with a reasonable African American employee's work performance and/or creating an intimidating, hostile, and/or offensive work environment for a reasonable African American employee.

69. That Scharstein, Kuebel, and Ellis supervised Plaintiff. As a result, Defendant Red Express is liable for the actions of the individuals. In the alternative, Defendant Red Express knew or should have known of the actions described herein, and failed to take reasonable care to prevent and promptly correct the actions of the individuals, and is therefore liable for their actions.

70. The facts as alleged herein constitute direct evidence of discrimination, or, in the alternative, Plaintiff was African American, and as such, was a member of the class of protected individuals.

71. Plaintiff was qualified for her job with Defendant Red Express at all times herein or otherwise performing their jobs in a manner which should have met the reasonable business expectations of the Defendant Red Express. Plaintiff suffered intentional discrimination and ultimately, and had various adverse actions taken against her as the result of her status within the protected class.

72. Furthermore, other individuals outside of Plaintiff's protected class employed by Defendant Red Express were treated more favorably, were not harassed, and did not have material adverse employment actions taken against them, or did not have material adverse employment actions taken against them for the same actions or omissions that served as the alleged basis for Plaintiffs' adverse action.

73.     In addition to the disparate treatment, Defendant Red Express' work requirements and/or other policies, given the flexibility and enforcement discretion regarding same, coupled with the existence of the treatment complained of herein, had a disparate treatment upon members of the protected class, i.e. African Americans.

74.     Following Plaintiff's reports of unlawful conduct to Defendant Red Express, and to Defendants Kuebel, Ellis, and Scharstein, discrimination and harassment escalated. Furthermore, Kuebel, Ellis, and Scharstein and Red Express took active, concerted steps to discharge Plaintiff after her initial report of race discrimination, and took other steps to retaliate against her, leading to her termination for retaliation and race.

75.     As a proximate result of the acts and omissions set forth above, Plaintiffs has suffered and continue to suffer damages and losses, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered and continues to suffer from emotional distress for which she should be compensated.

76.     The above actions by the Defendants constitute, without limitation, illegal race discrimination, illegal retaliation, and illegal hostile work environment race harassment, rendering Defendant Red Express and Kuebel, Ellis, and Scharstein liable for injunctive relief, equitable relief, including back pay, damages, attorneys' fees, compensatory damages, including damages for emotional distress, loss of income, benefits, punitive damages, and such other damages as may be proven at trial, under the provisions of 42 U.S.C. §1981, as well as 42 U.S.C. 1988.

## **COUNT V – PUNITIVE DAMAGES**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

15

77.     The facts as alleged herein demonstrate that the Defendants engaged in a discriminatory practice or practices, ongoing harassment, and retaliation with malice or with reckless indifference to Plaintiff's federally protected rights.

78.     As a result, Defendants' actions warrant the imposition of punitive damages under 42 U.S.C. §1981, 42 U.S.C. 1981a, Kentucky common law, and other applicable law.

79.     Furthermore, punitive damages are warranted under state law, as Defendants' actions constitute oppression and/or malice, and, insofar as Defendants are concerned, in that Defendants authorized and ratified, or should have anticipated, such conduct, especially after such conduct was reported to Defendant by Plaintiffs, and appropriate remedial action and remedies were not taken.

**WHEREFORE,** Plaintiff demands judgment against the Defendants as follows:

a. For all back pay, pre-judgment interest, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole, and compensate her for the civil rights violations described above;

b. For compensatory damages, not otherwise included in backpay and pre-judgment interest and fringe benefits, including emotional damages, liquidated damages, injunctive relief, including the removal of any and all derogatory information regarding Plaintiff found in any employment file or otherwise;

c. For Plaintiff's costs herein expended, including reasonable attorney's and expert's fees;

d. For an award of punitive damages;

e. For sufficient injunctive relief, enjoining future violations of state and federal anti-discrimination law by Defendants and removal of any adverse employment information;

f. For trial by jury on all issues so triable; and

g. All other relief as this Court finds just and proper.

## JURY DEMAND

Plaintiff hereby demands that all issues of fact in the foregoing Complaint be tried to a jury.

/s/Christopher Wiest

                                                Respectfully submitted,

                                                /s/ Christopher Wiest_____
                                                Christopher Wiest (KBA 90725)
                                                Robert A. Winter, Jr. (0038673)
                                                Paul J. Darpel (KBA 84989)
                                                Chris Wiest, Atty at Law, PLLC
                                                25 Town Center Blvd, Suite 104
                                                Crestview Hills, KY 41017
                                                859/486-6850 (v)
                                                513/257-1895 (c)
                                                859/495-0803 (f)
                                                chris@cwiestlaw.com

                                                Trial Attorneys for Plaintiffs